**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
ALEXSANDRA BRION,

                                  Plaintiff,

                  -against-

UNITED BUILDING MANAGEMENT
CORP. *et al.*,

                                Defendants.
-----------------------------------------------------------------X

                          **REPORT &**
                      **RECOMMENDATION**

          **25-CV-3593 (MMG) (JW)**

**To the Honorable Judge Garnett, United States District Judge:**

Plaintiff Alexsandra Brion ("Plaintiff" or "Brion"), proceeding *pro se*, brings this Action against Defendants United Building Management Corporation ("UBM"), N&N Services, Inc. ("N&N Services"), Service Employees International Union – Local 32BJ (the "Union" or "Local 32BJ"), Reality Advisory Board on Labor Relations, Inc. ("RAB"), and the Office of the Contract Arbitrator ("OCA") (collectively, "the Defendants."). Pending before the Court are motions to dismiss by Defendants Local 32BJ and the OCA. See Dkt. Nos. 28, 36. For the reasons that follow, the Court recommends that Defendant Local 32BJ and OCA's motions to dismiss be **GRANTED** with leave to amend for certain claims as to the Union.

## BACKGROUND

Unless otherwise stated, the following facts are drawn from Plaintiff's complaint and Plaintiff's opposition memorandum, including attached exhibits.[1] The

---

[1] Generally, "[w]hen considering a motion to dismiss, the Court's review is confined to the pleadings themselves" because "[t]o go beyond the allegations in the Complaint would convert the Rule 12(b)(6) motion into one for summary judgment pursuant to

facts alleged in the complaint and Plaintiff's opposition memorandum are assumed true for the purpose of resolving the instant motions to dismiss. See CompassCare v. Hochul, 125 F. 4th 49, 56–57 (2d Cir. 2025). Because the instant motions only pertain to Defendants Local 32BJ and OCA, the Court only notes facts necessary to resolve those motions.

### A. Employment with United Building Management

Brion is a former employee of UBM and N&N Services and a former union member of Local 32BJ.

Brion worked as a union building porter at UBM for approximately seven years. Dkt. No. 1 ("Compl.") at ¶¶ 2, 8. During COVID, UBM mandated that all porter employees be vaccinated against COVID-19. Id. at ¶ 13. In December 2021, Plaintiff submitted an exemption request from the COVID-19 vaccination to UBM

---

[Rule] 56." Doe v. County of Rockland, No. 21 Civ. 6751 (KMK), 2023 WL 6199735, at *1 (S.D.N.Y. Sept. 22, 2023). "Nevertheless, the Court's consideration of documents attached to, or incorporated by reference in the Complaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment." Thomas v. Westchester County Health Care Corp., No. 02 Civ. 1653 (VM), 232 F.Supp.2d 273, 275 (S.D.N.Y. 2002); see also Bellin v. Zucker, 6 F.4th 463, 473 (2d Cir. 2021) (same). Moreover, the Court's "mandate to read the papers of *pro se* litigants generously makes it appropriate to consider [a] plaintiff's additional materials, such as [the] opposition memorandum." Williams v. Barometre, No. 20 Civ. 7644 (KMK), 2022 WL 903068, at *2 (S.D.N.Y. Mar. 28, 2022) (quotation marks and citation omitted); see also Floyd v. Rosen, No. 21 Civ. 1668 (KMK), 2022 WL 1451405, at *3 (S.D.N.Y. May 9, 2022) (considering exhibits attached to *pro se* opposition memorandum). The Court may consider factual allegations raised in a *pro se* plaintiff's opposition "to the extent that those allegations are consistent with the Amended Complaint," and will do so here. Veras v. Jacobson, No. 18 Civ. 6724 (KMK), 2020 WL 5659551, at *1 n.1 (S.D.N.Y. Sept. 23, 2020); see Alsaifullah v. Furco, No. 12 Civ. 2907 (ER), 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (same).

based on religious grounds, which was denied.  Id. at ¶¶ 13–14.  On December 20, 2021, Plaintiff was terminated from UBM based on her refusal to receive the COVID-19 vaccination.  Compl. ¶¶ 2, 14.

The next day, on December 21, 2021, Plaintiff notified the Union of her termination and demanded reinstatement.  Id. at ¶ 15, Ex. C.  The Union then sent a grievance invitation letter to UBM regarding Brion's claim.  Id.  On April 22, 2022, the Union submitted the dispute to arbitration.  Id. at ¶¶ 13, 15; Ex. C.  The Union's attorney, Avita Morgan, corresponded with Harry Weinberg, attorney for the RAB, regarding this dispute.  Id. at ¶ 26; Ex. G.

On March 18, 2025, Union attorney Melissa Chan wrote to Plaintiff that it would no longer pursue her religious discrimination claim against UBM "because [the Union has] not been able to meaningfully discuss the claim with [Plaintiff]," but informed Plaintiff of her right to invoke the mediation process administered by OCA. Id. at ¶¶ 26–27; Ex. G.

### B. Employment with N&N Services

Following her termination from UBM, the Union reassigned Plaintiff to work at N&N Services in February 2023.  Id. at ¶ 18.  The new job resulted in a pay decrease of 28 dollars per hour to 20.34 dollars per hour.  Id.  Plaintiff was "the only Catholic Hispanic woman in the 15-person female porter team" at N&N Services.  Id. at ¶ 20.  Plaintiff was "singled out for degrading tasks" while the Muslim and Albanian women on the team were rotated through minimal cleaning zones.  Id. at ¶ 21.  When Plaintiff "questioned this disparity and discussed her union rights with

coworkers," her supervisor "continually suspended her for unrelated and false reasons." Id.

Plaintiff filed two complaints with the Union—on December 6, 2023, and March 22, 2024—regarding her suspensions from N&N Services. Id. at ¶ 21, Ex. E. On April 25, 2024, Plaintiff was terminated from N&N Services. Id. at ¶ 23. Her union-sponsored healthcare was canceled 120 days after her termination. Id. at ¶ 24.

A mediation session was held at OCA regarding Plaintiff's suspension from N&N Services, with a Union representative present. Id. at ¶ 29, Ex. I.

### C. Allegations of harassment, collusion, and fraud

Plaintiff alleges that Defendants, including the Union and OCA, "beat down [Plaintiff] into quitting any remedy for her claims." Id. at ¶ 30. She asserts that Defendants used "atypical retaliatory tactics, construed a false narrative to key community members in her industry to blacklist her," and "pressure[ed] her to partake in a rigged arbitration process and threaten[ed] her with a false narrative that her sole and exclusive remedy for their violative acts against her is the bogus union-[RAB] controlled arbitration process." Id. at ¶¶ 31, 35.

Regarding the arbitration process, Plaintiff alleges that Defendants "declined to commence a legitimate arbitration" and delayed proceedings, including by "later rescinding those representations to her and claiming" that the mediation and arbitration process are two separate processes. Id. at ¶ 37. Plaintiff avers she was "given no opportunity to participate in the selection of a neutral arbitrator" and

4

instead the arbitrator was "selected by the OCA using a list of impaneled arbitrators selected by the [U]nion and [RAB]." Id.

As to the Collective Bargaining Agreement ("CBA") itself, Plaintiff alleges that Defendants "construct[ed] a fraudulent, one-sided bargaining agreement that favors the employers, allows for discrimination to go without remedy, and for its continuation based on policies and mandates determined 'wholly unconstitutional' by the U.S. Supreme Court." Id. at ¶ 36. She further elaborates that that CBA "allows for representation of both workers (by the [U]nion) and employers (by the [RAB]) as optional and at the [U]nion and [RAB's] unilateral discretion-as only the [U]nion and/or [RAB] can begin an arbitration of any employer-employee dispute." Id. at ¶ 37.

**D. EEOC Letters**

On January 21, 2025, upon investigation by the Equal Employment Opportunities Commission ("EEOC"), and prior to the issuance of a Notice of Right to Sue from the agency, Defendants were "given notice . . . of their option to arbitrate, by law, but declined." Id. at ¶ 34. Plaintiff includes as an exhibit to her complaint a letter dated January 31, 2025 from the EEOC, which states that "[t]he EEOC has granted your request that the agency issue a Notice of Right to Sue." Id. at Ex. J. The letter does not name Defendants, or any party, in the letter. Id.

Plaintiff also attaches as an exhibit to her sur-reply a Charge of Discrimination with the EEOC dated January 29, 2025. Dkt. No. 63 at 8–11. In the Charge of Discrimination, Plaintiff asserted that former employer N&N Services discriminated

and retaliated against her based on her race.  Id. at 8.  The Charge did not name any other employers or labor organizations, including the Union and OCA, nor did it assert any discrimination or retaliations claims based on Plaintiff's religion.  Id.  More specifically, Plaintiff noted that she believed that her "union delegate, Mr. Rogelio Walker (32BJ) [] played a big role in allowing this abuse of power to continue, given his close relationship" with Plaintiff's managers at N&N Services.  Id. at 9.

## PROCEDURAL HISTORY

On April 30, 2025, Plaintiff filed her complaint in this action.  Dkt. No. 1.  On June 23, 2025, both the Union and OCA filed their motions to dismiss.  Dkt. Nos. 28, 36.  On July 8, 2025, Judge Garnett referred the dispositive motions to dismiss, including those at Dkt. Nos. 28 and 36, to the undersigned for a report and recommendation.  On July 10, 2025, Plaintiff filed a memorandum in opposition to the motions to dismiss.  Dkt. No. 55.  On July 17, 2025, and July 21, 2025, respectively, OCA and the Union filed replies in support of their motions to dismiss. Dkt. No. 57, 58.  On July 21 and July 28, 2025, Plaintiff filed two separate sur-replies without leave from the Court.  Dkt. Nos. 59, 63.  On August 4, 2025, OCA requested the opportunity to file a brief response to the two sur-replies in the event the Court was inclined to consider the facts and arguments in those papers.  Dkt. No. 64.  On August 7, 2025, the Union joined OCA in requesting an opportunity to respond to the two sur-replies.  Dkt. No. 66.  The Court granted both requests.  Dkt. No. 67.  On September 4 and 10, 2025, respectively, the OCA and Union filed responses to the

two sur-replies. Dkt. Nos. 68–69. The Court considers both the Union and OCA's motions to dismiss fully briefed.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).

A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." Twombly, 550 U.S. at 558. Although the Court must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor, Steginsky v. Xcelera Inc., 741 F.3d 365, 368 (2d Cir. 2014), that tenet is "inapplicable to legal conclusions." Ashcroft, 556 U.S. 662, 678.

"*Pro se* plaintiffs receive special solicitude from courts. Courts must 'liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest.'" Robinson v. US Dep't Just. US DEA, No. 19 Civ. 459 (AT), 2019 WL 2603530, at *1 (S.D.N.Y. June 24, 2019) (quoting Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007)). "However, even for a *pro se* plaintiff, 'conclusory allegations masquerading as factual conclusions [] are

insufficient to defeat a motion to dismiss.'" Id. (quoting Jackson v. Cty. of Rockland, 450 F. App'x 15, 19 (2d Cir. 2011)).

## DISCUSSION

The Court considers the claims asserted against (1) the Union and (2) the OCA in turn.

### A.  Claims against the Union

The Court construes *pro se* Plaintiff's pleadings as asserting the following claims against the Union: a breach of duty of fair representation ("DFR") claim under the Labor Management Reporting and Disclosure Act ("LMRA), 29 U.S.C. § 401; discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII"); and claims under the Religious Freedom Restoration Act of 1993 ("RFRA"), the Employee Retirement Income Security Act of 1974 ("ERISA"); the Federal Arbitration Act ("FAA"), and New York state law.  Each of these claims is addressed below.

### a.  Duty of Fair Representation claim

"Under federal common law, unions owe their members a duty of fair representation ('DFR'), which derives 'from the union's statutory role as exclusive bargaining agent.'" Dillard v. SEIU Local 32BJ, No. 15 Civ. 4132 (CM), 2015 WL 6913944, at *4 (S.D.N.Y. Nov. 6, 2015) (quoting Air Line Pilots Ass'n Int'l v. O'Neill, 499 U.S. 65, 74 (1991)).  "An employee's claim against a union for breaching its duty of fair representation [] is a cause of action 'implied under the scheme' of the National Labor Relations Act ('NLRA'), 29 U.S.C. §§ 151–169." Kalyanaram v. Am. Ass'n of

Univ. Professors at New York Inst. of Tech., Inc., 742 F.3d 42, 46 (2d Cir. 2014) (quoting DelCostello, 462 U.S. at 164 & n.14). "The duty of fair representation is a 'statutory obligation' under the NLRA, requiring a union 'to serve the interests of all members without hostility or discrimination . . ., to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" Fowlkes v. Ironworkers Loc. 40, 790 F.3d 378, 387–88 (2d Cir. 2015) (quoting Vaca v. Sipes, 386 U.S. 171, 177 (1967)).

As a general matter, neither the Union's decision to decline to pursue an employee's complaint through the full grievance procedure of the collective bargaining agreement, "nor the employee's dissatisfaction with the manner in which the union conducted the representation" constitutes grounds for finding a breach of duty. Saidin v. New York City Dept. of Ed., No. 06 Civ. 6974 (VM), 498 F.Supp.2d 683, 689 (S.D.N.Y. 2007), reconsideration denied, 245 F.R.D. 175 (S.D.N.Y. 2007). Rather, to survive a motion to dismiss, a plaintiff must set forth concrete facts from which one can infer a union's discrimination, bad faith, or arbitrary exercise of discretion. Vaca, 386 U.S. at 190. "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational.'" Sanozky v. Int'l Assoc. of Machinists and Aerospace Workers, 415 F.3d 279, 282–83 (2d Cir. 2005). "A union's acts are discriminatory when 'substantial evidence' indicates that it engaged in discrimination that was 'intentional, severe, and unrelated to legitimate union objectives.'" Vaughn v. Airline Pilots Ass'n, Int'l,

604 F.3d 703, 709 (2d Cir. 2010) (citing Amalgamated Ass'n of St., Elec., Ry. & Motor Coach Employees of Am. v. Lockridge, 403 U.S. 274, 301 (1971)).  A union acts in bad faith if it engages in fraudulent, deceitful, or dishonest conduct.  White Rose Food, a Div. of DiGiorgio Corp., 237 F.3d 174, 179 (2d Cir. 2001).

A court's examination of a union's representation "must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities."  Alen v. U.S. Airways, Inc., 526 F. App'x 89, 91 (2d Cir. 2013) (quoting Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 78 (1991)).  "To start, no union-represented employee has the absolute right to have his grievance presented for arbitration, even where he can establish that the grievance might have been meritorious."  Cano v. SEIU Local 32BJ, No. 19 Civ. 9910 (PAE) (KHP), 2021 WL 4927166, at *12 (S.D.N.Y. June 15, 2021) (citing Vaca, 386 U.S. at 191, 194-95 (1967).  Further, "mere negligence" by the Union in its enforcement of a collective bargaining agreement does "not state a claim for breach of the duty of fair representation."  United Steelworkers of Am. v. Rawson, 495 U.S. 362, 372–73 (1990); see also Barr v. United Parcel Serv., Inc., 868 F.2d 36, 43–44 (2d Cir.1989).

"Establishing that the union's actions were sufficiently arbitrary, discriminatory or in bad faith, is only the first step toward proving a fair representation claim."  Spellacy v. Airline Pilots Ass'n Int'l, 156 F.3d 120, 126 (2d Cir. 1998) (cleaned up).  Plaintiff also must demonstrate a causal connection between the union's wrongful conduct and his injury.  See id.

### i. **DFR claim**

Construed liberally, Plaintiff alleges that the Union breached its DFR by "delay[ing], suppress[ing], and undermin[ing] Plaintiff's grievance process, reassign[ing] her to known abusive employers, and misrepresent[ing] arbitration rights." Compl. ¶ 43. But none of the facts alleged in her complaint or opposition papers support the inference that the Union's conduct was "arbitrary, discriminatory, or in bad faith." White, 237 F.3d at 178–79.

First, Plaintiff alleges that the Union mishandled the grievance process concerning her suspensions and termination from N&N Services. For instance, she asserts that the Union informed her she was "number 83" on the arbitration list and that her case was "suppressed" while the Union pursued other arbitration cases "involving lesser issues." Compl., ¶ 16. She also alleges that during an "eventual arbitration," she was informed that the Union "has thousands of arbitrations." Id. at ¶¶ 16–17.

However, delays or dissatisfaction with the Union's representation is insufficient to find a breach of the Union's DFR, and would instead equate to negligence, "which does not give rise to a breach." Barr v. United Parcel Serv., Inc., 868 F.2d 36, 43–44 (2d Cir. 1989) ("As long as the union acts in good faith, the courts cannot intercede on behalf of employees who may be prejudiced by rationally founded decisions which operate to their particular disadvantage."). Instead, "courts typically require evidence of prejudice, noncompliance with time limits set forth in a CBA, egregious departure from standard union practice, or other evidence of bad faith

11

before basing a DFR violation on too-slow grievance of a claim." Bejjani v. Manhattan Sheraton Corp., No. 12 Civ. 6618 (JPO), 2013 WL 3237845, at *11 (S.D.N.Y. June 27, 2013) aff'd, 567 F. App'x 60 (2d Cir. 2014) (citations omitted); see also Sahni v. Staff Att'ys Ass'n, No. 14 Civ. 9873 (NSR), 2016 WL 1241524, at *8 (S.D.N.Y. Mar. 23, 2016) (concluding that there was no prejudice from delayed processing because the complaint "contain[ed] no allegations that the Union's delay in arbitrating Plaintiff's involuntary transfer and suspension grievances violated any of the time limits set forth in the CBA").

Further, while Plaintiff alleges that the Union "reassign[ed] her to known abusive employers," she fails to plead any facts to support this conclusion. Compl. ¶ 43. Instead, Plaintiff simply asserts that the Union's reassignment resulted in a "dramatic pay cut" and that the Union placed her under a supervisor "with documented connections to figures known in the industry to be involved in illicit union influence." Id. at ¶¶ 18–19. This is not enough to assert a breach of DFR.

Lastly, Plaintiff alleges that the Union breached its DFR by running an "arbitration fraud scheme," and "construct[ing] a fraudulent, one-sided bargaining agreement that favors the employers, allows for discrimination to go without remedy, and for its continuation based on policies and mandates determined 'wholly unconstitutional' by the U.S. Supreme Court.'" Compl. ¶¶ 31, 35, 36. But again, Plaintiff has failed to plead any facts to support her conclusory allegations of fraud, as she fails to explain in what way the arbitration was "fraudulent," or how the policies at issue are "wholly unconstitutional."

12

Even if Plaintiff has adequately plead that the Union breached its DFR, Plaintiff's DFR still claims for failure to allege a causal connection between the Union's conduct and her injuries, as required. See Spellacy, 156 F.3d at 126. For these reasons, the Court recommends the motion to dismiss the DFR claim be **GRANTED**.

### ii. <u>Hybrid DFR claim against the Union and Employer Defendants</u>

To the extent Plaintiff brings a hybrid DFR claim, that too should be dismissed. Under federal labor law, a union-represented employee may bring a court action against his employer and/or union in what is referred to as a hybrid claim. White, 237 F.3d at 179. "To establish a hybrid § 301/DFR claim, a plaintiff must prove both (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation vis-a-vis the union members." Id. at 178 (citing DelCostello, 462 U.S. at 164). "Section 301 of the [LMRA] governs the employer's duty to honor the collective bargaining agreement, and the duty of fair representation is implied under rom § 9(a) of the National Labor Relations Act." Id. at 164 n. 3 (citing DelCostello, 462 U.S. at 164).

Here, the Court finds that Plaintiff has alleged the first element of a hybrid claim. Reading the complaint and Plaintiff's opposition memorandum in the light most favorable to *pro se* Plaintiff, the Court finds the the "breach of contract" element refers to UBM's termination of Plaintiff and N&N Services' suspensions and eventual termination of Plaintiff based on alleged religious and/or racial discrimination grounds.

13

But as discussed *supra*, the Court finds that Plaintiff has failed to allege the second necessary element—that the Union breached its DFR.  As such, this Court recommends that the Union's motion to dismiss Plaintiff's hybrid DFR claim be **GRANTED**.

### b.  Title VII claim

Plaintiff asserts that Defendants violated Title VII on religious discrimination and retaliation grounds.  Compl. ¶ 41.  Because the complaint also refers to Plaintiff's ethnicity and her former employer N&N Services' alleged unequal treatment of Plaintiff vis-à-vis Muslim and Albanian women (see, e.g., Compl. ¶ 21), the Court construes the complaint as alleging race discrimination under Title VII as well.

### i.  Failure to exhaust

"Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII statutory scheme and, as such, a precondition to bringing such claims in federal court." Kirkland-Hudson v. Mount Vernon City Sch. Dist., No. 21 Civ. 695 (KMK), 665 F. Supp. 3d 412, 437 (S.D.N.Y. 2023) (cleaned up) (quoting Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001)). Administrative exhaustion serves to avoid unnecessary judicial action by the federal courts by "giv[ing] the administrative agency the opportunity to investigate, mediate, and take remedial action." Stewart v. U.S. I.N.S., 762 F.2d 193, 198 (2d Cir. 1985). "Thus, before filing a complaint in federal court, plaintiffs asserting Title VII . . . claims must first exhaust their administrative remedies by filing a complaint with the EEOC or the equivalent state agency." Hamilton v. Siemens Healthcare

Diagnostics, Inc., No. 23 Civ. 7408 (KMK), 2025 WL 863572, at *4 (S.D.N.Y. Mar. 18, 2025) (citation omitted).

Generally, "the aggrieved party's right to sue is limited to the party named in the EEOC charge." Pajooh v. Dep't of Sanitation, No. 11 Civ. 0317 (LTS) (MHD), 2012 WL 4465370, at *5 (S.D.N.Y. Sept. 27, 2012). "The purpose of this requirement is to notify the charged party of the alleged violation and to bring [her] before the EEOC, thereby permitting effectuation of the Act's primary goal, the securing of voluntary compliance with the law." Id. (citing Dortz v. City of New York, 904 F.Supp. 127, 142 (S.D.N.Y.1995)). Despite this general rule, courts have recognized an "identity of interest" exception "where there is a clear identity of interest between the unnamed defendant and the party named in the administrative charge." Johnson v. Palma, 931 F.2d 203, 209 (2d Cir. 1991). To determine whether this exception applies, the Court considers the following factors:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

Id. (citing Vital v. Interfaith Med. Ctr., 168 F.3d 615, 619 (2d Cir.1999)).

Further, "[t]he failure to file a timely complaint with the EEOC is not necessarily fatal[,]" as "[a] plaintiff may overcome this deficiency by showing that

15

[s]he is entitled to equitable tolling." <u>Bowens v. Corr. Ass'n of New York</u>, No. 19 Civ. 1523, 2019 WL 1586857, at *6 (E.D.N.Y. Apr. 12, 2019) (citing <u>Fowlkes v. Ironworkers Loc. 40</u>, 790 F.3d 378, 385–86 (2d Cir. 2015)); <u>see also</u> <u>Oparaji v. Teachers' Retirement System of the City of New York</u>, No. 23 Civ. 5212 (KMW), 2024 WL 3046120, at *5 (S.D.N.Y. June 18, 2024) ("The Second Circuit has repeatedly held that 'the failure to exhaust administrative remedies is [only] a precondition to bringing a Title VII . . . claim in federal court, rather than a jurisdictional requirement' that, 'like a statute of limitations, is subject to [equitable defenses].'" (quoting <u>Hardaway v. Hartford Pub. Works Dep't</u>, 879 F.3d 486, 491 (2d Cir. 2018)).  To warrant equitable tolling, a plaintiff must show she has pursued her claims with "reasonable diligence" and that "extraordinary" circumstances beyond her control prevented her from filing her administrative claims.  <u>Bowens v. Corr. Ass'n of N.Y.</u>, No. 19 Civ. 1523 (PKC) (CLP), 2019 WL 1586857, at *6 (S.D.N.Y. Apr. 12, 2019).

Here, Plaintiff asserts that in January 2025, upon investigation by the EEOC, and "prior to the issuance of a Notice of Right to Sue from the agency, [] [D]efendants were given notice of their option to arbitrate, but declined."  Compl. ¶ 34.  She includes as an exhibit a letter from the EEOC titled "Dismissal and Notice of Rights," which states that "[t]he EEOC has granted your request that the agency issue a Notice of Right to Sue."  <u>Id.</u> at Ex. J.  The letter does not name Defendants, or any party.  <u>Id.</u>  Plaintiff also attaches a Charge of Discrimination with the EEOC dated January 29, 2025, naming N&N Services as the employer who discriminated against Plaintiff based on race and retaliation.  Dkt. No. 63.

16

Taken together, these allegations and exhibits do not meet the exhaustion requirements as to the Union. First, while the Charge of Discrimination named N&N Services, it does not name the Union. Id. Second, the "clear identity of interests" exception does not apply here because Plaintiff knew the role of the unnamed party— the Union—at the time of filing her EEOC charge, and there is no identity of interests between named party N&N Services and the Union. See Pajooh, 2012 WL 4465370, at *6 (finding no identity of interest exception where plaintiff only named former employer in his EEOC charge and not Local 831, the union); see also Vital v. Interfaith Med. Ctr., 168 F.3d at 619–20 (holding plaintiff could not sue union where plaintiff named only his former employee and not his former union in his EEOC charge and Right to Sue Letter).

Lastly, Plaintiff does not argue or plead facts to support that she is entitled to equitable tolling. See Fowlkes, 790 F.3d at 385–86. As such, the Court recommends the motion to dismiss the Title VII claims be **GRANTED**.

### ii. Merits of Title VII claims

Assuming *arguendo* that Plaintiff properly exhausted her administrative remedies prior to suing the Union, the Court nonetheless recommends the motion to dismiss Plaintiff's discrimination claims be **GRANTED** because Plaintiff has failed to allege sufficient facts to frame a plausible Title VII claim on discrimination or retaliation grounds.

17

## 1. Discrimination claim

Discrimination by unions is prohibited by Title VII, which makes it "an unlawful employment practice for a labor organization . . . to exclude or to expel from its membership, or otherwise discriminate against, any individual because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(c)(1). "To bring a Title VII discrimination claim against a union . . . the plaintiff must demonstrate that (1) the Union breached its duty of fair representation to plaintiff; and (2) that the Union's conduct was motivated by animus toward the plaintiff's protected status." Dillard, 2015 WL 6913944, at *4 (citing McIntyre v. Longwood Cent. Sch. Dist., 380 F. App'x 44, 49 (2d Cir. 2010)).

As discussed *supra*, Plaintiff has failed to adequately plead that the Union breached its duty of fair representation. But even assuming there is a DFR breach, Plaintiff's discrimination claim still fails for failure to allege facts giving rise to an inference of racial or religious discrimination. While Plaintiff specifically alleges discrimination based on age and religion by Plaintiff's former employers UBM and N&N Services, she fails to plead any facts from which the Court could infer that the Union was motivated by animus towards her based on her race or religion.

## 2. Retaliation claim

To sustain a *prima facie* case of retaliation under Title VII, a plaintiff must demonstrate that "(1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4)

there was a causal connection between the protected activity and that adverse action." Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir. 2012).

While Plaintiff alleges that the Union "reassigned Plaintiff to retaliatory positions" and "use[d] atypical retaliatory tactics (Compl. ¶¶ 31, 44), she fails to plead any details to support her conclusions, let alone lay out facts supporting the four necessary elements of a Title VII retaliation claim.

### c. **State law claims**

Because the Court recommends that Plaintiff's federal claims against the Union be dismissed, the Court also recommends that supplemental jurisdiction not be extended to the state law claims against the Union. See 28 U.S.C. § 1367(c)(3). Even if the Court exercises supplemental jurisdiction, Plaintiff's three state law claims—promissory estoppel, intentional infliction of emotional distress ("IIED"), and fraud—should be dismissed on preemption or in the alternative, merits grounds.

### i. **State law claims are preempted**

All three of Plaintiff's state law causes of actions are preempted by section 301 of the LMRA, which states the following:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties . . . .

29 U.S.C. § 185(a). Section 301 "preempts claims that are 'inextricably intertwined with consideration of the terms of [a] labor contract.'" Wall v. Constr. & Gen. Laborers' Union, Loc. 230, 224 F.3d 168, 178 (2d Cir. 2000) (quoting Allis-Chalmers

19

Corp. v. Lueck, 471 U.S. 202, 213 (1985)). Any suit in state court "alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law." Allis-Chalmers Corp., 471 U.S. at 210. "A state rule that purports to define the meaning or scope of a term in a contract suit therefore is pre-empted by federal labor law." Id. Moreover, "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." Id. at 211. "Any other result would elevate form over substance and allow parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract." Id.

### 1. Promissory estoppel

Plaintiff alleges that she "relied on the promises of her union . . . that 1) they would uphold their legal requirement to represent her to her benefit, not her detriment as they did, 2) that their representations of a legitimate arbitral process were true, and 3) that their president, his attorneys, delegates and assigns, including the other defendants, would not breach their contracts and promises and perform the duty tasked in them by the Federal Government through the FAA to perform a non-biased, impartial arbitration process." Compl. ¶ 45. As Plaintiff's promissory estoppel claim would require the Court to construe the terms of the CBA and determine whether it "was intended to be the sole agreement among the parties," Plaintiff's promissory estoppel claim is preempted by Section 301. Dulay v. United

20

Technologies Corp., No. 93 Civ. 2020 (JAC), 1994 WL 362149, *5 (D.Conn. June 10, 1994).

### 2. Intentional infliction of emotional distress

In support of her IIED claim, Plaintiff alleges that the "[U]nion['s] neglect[] led to permanent disfigurement, public humiliation, and severe distress."  Compl. ¶ 46. Reading the complaint in the light most favorable to Plaintiff, the Court interprets "Union neglect" to be based on the Union's alleged breach of a duty arising under the CBA.  And because Plaintiff's claim appears to be based on an alleged breach under the terms of the CBA, Plaintiff's IIED claim is preempted.  See Heaning v. Nynex–New York, No. 95 Civ. 8111 (SS), 945 F.Supp. 640, 645 (S.D.N.Y. 1996) (holding that preemption applies to IIED claim because it was based on "defendant's breach of a duty arising under the CBA"); see also Dulay, 1994 WL 362149, * 5 (noting that an IIED claim requires the court "to determine whether the defendant's conduct exceeded the bounds of the collective bargaining agreement.").

### 3. Fraud

In support of her fraud claim, Plaintiff alleges that Defendants, including the Union, "misrepresented" the OCA arbitration as independent when "[i]n reality, it was controlled by Defendants and used to deny justice to Plaintiff."  Compl. ¶ 47. Plaintiff also alleges that Defendants "pressure[d] [Plaintiff] to partake in a rigged arbitration process and threaten[ed] her with a false narrative that her sole and exclusive remedy . . . is the bogus union-[RAB] controlled arbitration process," and "construct[ed] a fraudulent, one-sided bargaining agreement that favors the

21

employers, allows for discrimination to go without remedy, and for its continuation based on policies and mandates determined 'wholly unconstitutional' by the U.S. Supreme Court." Id. at ¶¶ 31, 35. Plaintiff also alleges that Defendants "declined to commence a legitimate arbitration" and delayed proceedings, including by "later rescinding those representations to her and claiming" that the mediation and arbitration process are two separate processes. Id.

Here, Plaintiff's fraud claim is "founded directly on rights created by the [CBA], as opposed to rights which [Plaintiff] possesses independently, and clearly implicates the terms of that Agreement." Gorodkin v. Q-Co. Indus., No. 89 Civ. 8033 (LMM), 1992 WL 122769, at *12 (S.D.N.Y. May 27, 1992). For instance, Plaintiff's allegation that Defendants "construct[ed] a fraudulent, one-sided bargaining agreement" directly "require[s] construing the collective-bargaining agreement." Compl. ¶ 31, see Lingle, 486 U.S. at 407. Accordingly, because resolution of the claim "is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract," Plaintiff's fraud claim is preempted by section 301. Allis-Chalmers Corp., 471 U.S. at 220.

### ii. State law claims on the merits

Assuming *arguendo* that Plaintiff's common law claims are not preempted, Plaintiff's promissory estoppel claim is adequately pled, but her IIED and fraud claims fail on the merits. The Court addresses each of the three claims in turn.

22

### 1. Promissory estoppel

"In New York, promissory estoppel has three elements: [1] a clear and unambiguous promise; [2] a reasonable and foreseeable reliance by the party to whom the promise is made, and [3] an injury sustained by the party asserting the estoppel by reason of the reliance." Cyberchron Corp. v. Calldata Sys. Dev., Inc., 47 F.3d 39, 44 (2d Cir. 1995) (cleaned up).

The Union argues that Plaintiff fails to allege (1) a clear and unambiguous promise made to her by the Union or (2) her reasonable and foreseeable reliance on the alleged promise. The Court disagrees. Plaintiff meets the first element by alleging that "the Union made an unambiguous promise that [] [the Union] would uphold their legal requirement to represent her to her benefit" pursuant to the CBA. Compl. ¶ 45. As to the second element, Plaintiff adequately alleges in her complaint that she reasonably and foreseeably relied on the alleged promise when she was terminated at both UBM and N&N Services and sought Union representation for her claims against her former employers. Id. Lastly, she sufficiently alleges that she was injured by lack of access to a "non-biased, impartial arbitration process." Id. As such, if the District Court finds that Plaintiff's promissory estoppel claim is not preempted, this Court recommends the motion to dismiss the promissory estoppel claim be **DENIED**.

### 2. Intentional infliction of emotional distress

To state an IIED claim, Plaintiff must allege: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of

causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Conboy v. AT&T Corp., 241 F.3d 242, 258 (2d Cir. 2001) (citation omitted).  Reading the complaint in the light most favorable to *pro se* Plaintiff, the Court finds that Plaintiff has failed to allege any of the elements of an IIED claim as to the Union.

Plaintiff alleges that the "[U]nion['s] neglect[] led to permanent disfigurement, public humiliation, and severe distress."  Compl. ¶ 46.  The Court construes the following allegations to support Plaintiff's IIED claim: that the Union president "colluded with all other Defendants to suppress Plaintiff's case, sabotaged the arbitration process, delayed her grievance process by over a year, reassigned her to an abusive workplace, delegated arbitration duties to her former employer's attorneys, and allowed her health insurance to lapse during medically necessary treatment, resulting in permanent injury and disfigurement." Id. ¶ 4.

While the Court finds that Plaintiff has sufficiently pled facts in support of some of these allegations, the Court finds that the allegations that could be considered "extreme and outrageous" conduct—such as colluding with other Defendants to suppress Plaintiff's case and sabotaging the arbitration process—are conclusory.  As such, even if there is no preclusion, the Court recommends the motion to dismiss the IIED claim be **GRANTED**.

### 3.  Fraud

"Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to

be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001) (citing Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d 413, 421 (1996)).

While the Court finds that Plaintiff has alleged the first, fourth, and fifth elements of fraud, the complaint is completely bereft of facts alleging the remaining two factors. For instance, nowhere in the complaint or Plaintiff's opposition papers does she allege that the Union knew that these alleged misrepresentations were false, or that they were made to Plaintiff with the intention of inducing reliance. Even if there is no preclusion, the Court recommends the motion to dismiss the fraud claim be **GRANTED**.

### d. **RFRA claim**

The Religious Freedom Restoration Act of 1993 ("RFRA") provides that the "*[g]overnment* shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C.A. § 2000bb-1 (2025) (emphasis added). The Union asserts this count must be dismissed because RFRA is not applicable in cases where the government is not a party. The Court agrees, as "that statute imposes restrictions on only the government and not private actors." Parks v. Montefiore Medical Center, No. 23 Civ. 4945 (JPO), 2024 WL 917330, at *3 (S.D.N.Y. Mar. 4, 2024).

Assuming *arguendo* Plaintiff has standing to sue the Union under the RFRA, the claim also fails on the merits. To establish a *prima facie* RFRA violation, the

plaintiff[] must demonstrate that [she] sought to engage in the exercise of religion and that the defendant-officials substantially burdened that exercise." Sabir v. Williams, 52 F.4th 51, 59 (2d Cir. 2022). To support her claim, Plaintiff merely alleges that "Plaintiff's religious rights were burdened by private parties acting in concert with a union and employer group." Compl. ¶ 42. This is not enough to make a *prima facie* showing of an RFRA claim, as Plaintiff has failed to explain what government action is involved in this claim against the Union. As such, the Court recommends the motion to dismiss the RFRA claim be **GRANTED**.

### e. ERISA claim

"In a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity [] may be held liable." Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1199 (2d Cir. 1989) (citing 29 U.S.C. § 1132(d)(2); see also Kazazian v. Bartlett & Bartlett LLP, No. 03 Civ. 7699 (LAP), 2006 WL 2563517, at *3 (S.D.N.Y. Sept. 6, 2006) (dismissing ERISA claims brought against employer and stating that plaintiff's "choice of defendant may be an accurate reflection of a personal grievance, but it is not an accurate reflection of the proper party to an action under ERISA."). An employer cannot be liable "where the employer has designated a plan administrator in accordance with 29 U.S.C. § 1002(16)(A)." Crocco v. Xerox Corp., 137 F.3d 105, 107 (2d Cir. 1998). Section 1002(16)(A) defines "administrator" as "the person specifically so designated by the terms of the instrument under which the plan is operated."

Here, the 32BJ Benefit Fund, not the Union, provides health benefits to its union members. Accordingly, the Union is not a proper party is a suit under 29 U.S.C. § 1132(a). See Cruz v. Local 32BJ, No. 22 Civ. 3068 (PGG) (SDA), 2024 WL 4357036, at *16 n.8 (S.D.N.Y. Sept. 30, 2024) (dismissing plaintiff's DFR claim to the extent it is premised on the termination of her health benefits because it "should be addressed to [the Local 32BJ benefit fund, [and] not the union.'"). Thus, the Court recommends that the motion to dismiss this claim be **GRANTED**.

### f. Federal Arbitration Act claim

Plaintiff asserts a cause of action for "Fraud and FAA Violations" under 9 U.S.C. § 10 alleging that the "OCA arbitration was misrepresented as independent [when] [i]n reality, it was controlled by Defendants and used to deny justice to Plaintiff." Compl. ¶ 47.

The Court does not find that Plaintiff has a proper basis to allege a claim under the FAA, particularly 9 U.S.C. § 10, which applies to arbitration awards (which are not at issue here). As such, the Court recommends the motion to dismiss Plaintiff's FAA claims be **GRANTED** with prejudice.

### B. Claims against Defendant OCA

Defendant OCA contends that this civil action is barred against it by the doctrine of arbitral immunity. Dkt. No. 30. The Court agrees.

The arbitrable immunity doctrine provides that "arbitrators in contractually agreed upon arbitration proceedings are absolutely immune from liability in damages for all acts within scope of the arbitral process." Buhannic v. Am. Arb. Ass'n, No. 18

Civ. 2430 (ER), 2019 WL 4735005, at *5 (S.D.N.Y. Sept. 27, 2019) (citing Austern v. Chicago Bd. Options Exch., Inc., 898 F.2d 882, 886 (2d Cir. 1990)).   Sponsoring organizations such as the OCA are "equally entitled to immunity for all functions that are integrally related to the arbitral process."  Id.; see also Antongorgi v. Bovena, No. 06 Civ. 5777 (DLI) (LB), 2007 WL 2126096, at *4 (E.D.N.Y. July 24, 2007) ("It is well-settled that arbitrators, organizations that sponsor arbitration, and bodies administering arbitrations, such as OCA, are immune from civil liability in actions contesting the process or results of arbitration.").

Plaintiff asserts various claims against OCA, including that OCA, along with other Defendants, "pressure[d] her to partake in a rigged arbitration process" and "coordinate[d] the creation of an alternate termination pretext."  Compl. ¶ 36.  But even if true and sufficiently pled, these actions were taken under OCA's management of the arbitration and are "thus sufficiently related to the arbitral process to justify immunity."  Buhannic, 2019 WL 4735005, at *5 (finding that allegations of improper selection of arbitrators and defective reviewing procedures were within scope of arbitral immunity); see Austern, 898 F.2d at 886 (finding alleged conduct including improper selection of the arbitration panel and management of arbitration sufficiently related to the arbitration to justify immunity).

Because the law is clear with regards to the doctrine of arbitral immunity, the Court finds any further amendment futile and recommends **GRANTING** the motion to dismiss all claims against OCA with prejudice.

28

## LEAVE TO AMEND

Generally, "*pro se* litigants should be given leave to amend a complaint if a liberal reading of the complaint gives any indication that a valid claim might be stated." Munoz–Nagel v. Guess, Inc., No. 12 Civ. 1312 (ER), 2013 WL 1809772, at *7 (S.D.N.Y. Apr. 30, 2013) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir.2000)). Moreover, "[w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 190 (2d Cir. 2015). However, "leave to amend need not be granted when amendment would be futile." See Terry v. Inc. Vill. of Patchogue, 826 F.3d 631, 633 (2d Cir. 2016).

Because OCA is "absolutely immune from liability in damages for all acts within scope of the arbitral process," Plaintiff's claims against OCA are incurable. Buhannic, 2019 WL 4735005, at *5. Therefore, the Court recommends leave to amend all claims against OCA be **DENIED.**

Further, and as discussed *supra*, the Court finds that the (1) FAA claim, (2) RFRA claim, and (3) ERISA claim against the Union are uncurable. Thus, the Court recommends that leave to amend these claims as to the Union be **DENIED**.

However, Plaintiff may be able to allege additional facts or cure flaws in the complaint regarding the following claims against the Union: (1) DFR claim, (2) Title VII retaliation claim, (3) Title VII discrimination claim, (4) promissory estoppel state

law claim, (5) IIED state law claim, and (6) fraud state law claim.  The Court therefore recommends leave to amend these claims be **GRANTED**.

**RECOMMENDATION**

For the foregoing reasons, this Court recommends that Defendant OCA and the Union's motions to dismiss be **GRANTED** in full.

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to objections shall be filed with the Clerk of Court and on ECF.  Any requests for an extension of time for filing objections must be directed to Judge Garnett.  **Failure to file objections within fourteen days will result in a waiver of objections and will preclude appellate review**.  See Thomas v. Arn, 474 U.S. 140 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

SO ORDERED.

DATED:     New York, New York
           January 28, 2026

_____
JENNIFER E. WILLIS
United States Magistrate Judge