UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ALEXSANDRA BRION,

                              Plaintiff,                          **ORDER**

            -against-                                   **25-CV-3593 (MMG) (JW)**

UNITED BUILDING MANAGEMENT
CORP. *et al.*,

                              Defendants.
-----------------------------------------------------------------X
**JENNIFER E. WILLIS, United States Magistrate Judge:**

Plaintiff Alexsandra Brion ("Plaintiff" or "Brion"), proceeding *pro se*, brings

this action against Defendants United Building Management Corporation ("UBM"),

N&N Services, Inc. ("N&N Services"), Service Employees International Union – Local

32BJ (the "Union" or "Local 32BJ"), Reality Advisory Board on Labor Relations, Inc.

("RAB"), and the Office of the Contract Arbitrator ("OCA") (collectively, "the

Defendants").  Before this Court is Defendants UBM, N&N Services, and RAB's

(collectively, "Employer Defendants") motions to compel arbitration.  See Dkt. Nos.

33, 42, 45.  For the reasons that follow, these motions to compel arbitration are

**GRANTED** and the actions stayed for Employer Defendants.

                              **BACKGROUND**

    A. **Procedural history**

On April 30, 2025, Plaintiff filed her complaint against Defendants, alleging

the following causes of action: a breach of duty of fair representation ("DFR") claim

under the Labor Management Reporting and Disclosure Act ("LMRA), 29 U.S.C. §

401, discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), and other claims under the Religious Freedom Restoration Act of 1993 ("RFRA"), the Employee Retirement Income Security Act of 1974 ("ERISA"), the Federal Arbitration Act ("FAA"), and New York state law.  Dkt. No. 1 ("Compl.").

On May 15, 2025, the case was referred to the undersigned for general pretrial. Dkt. No. 20.  On July 8, 2025, the referral was amended so that "the motions to dismiss and/or compel arbitration filed at Dkt. Nos. 28, 33, 36, 42, and 45 in this action shall also be referred to Magistrate Judge Willis."  Dkt. No. 54.  Because "[d]istrict courts in this Circuit regularly have concluded that a motion to compel arbitration and stay litigation pending arbitration is non-dispositive and therefore within a Magistrate Judge's purview to decide without issuing a report and recommendation," the Honorable Margaret M. Garnett stated that the undersigned "may enter a final order on the portions of the motions . . . seeking to compel arbitration, and if such motions are granted, stay the case against the relevant defendant[s] pending arbitration."  Id. (citing Chen-Oster v. Goldman Sachs & Co., No. 10 Civ. 6950 (AT) (RWL), 449 F.Supp.3d 216, 227 n.1 (S.D.N.Y. 2020)).

B. **The motions to compel arbitration**

Before this Court are three separate motions to compel arbitration filed by Employer Defendants RAB (Dkt. No. 33), N&N Services (Dkt. No. 42), and UBM (Dkt. No. 45).  On July 17, 2025, Defendant Local 32BJ filed a memorandum of law in opposition to Employer Defendants' motions to compel arbitration.  Dkt. No. 56.  On July 27, 2025, Defendants UBM and N&N Services jointly filed a reply in support of

their separate motions to compel arbitration.  Dkt. No. 61.  The next day, ARB filed a short letter advising the Court that it joined in the arguments set forth in UBM and N&N Services' reply at Dkt. No. 61.  Dkt. No. 62.  While Plaintiff filed motions in opposition to other motions to dismiss (see Dkt. Nos. 59, 63), she did not appear to oppose Employer Defendants' motions to compel arbitration.  The Court considers these motions to compel fully briefed.

### C. Relevant facts

The following allegations are drawn from the complaint and are assumed true for the purposes of the pending motions to compel arbitration.

#### a. Plaintiff's employment at UBM and N&N Services

Brion worked as a union building porter at UBM for approximately seven years.  Compl. ¶ 1.  During the pandemic, UBM mandated that all porter employees be vaccinated against COVID-19.  Id. at ¶ 13.  In December 2021, Plaintiff submitted an exemption request from the COVID-19 vaccination to UBM based on religious grounds, which was denied.  Id. at ¶¶ 13–14.  On December 17, 2021, Plaintiff submitted a complaint to the Union regarding UBM's denial of her exemption request.  Id. at ¶ 13, Ex. C.  On December 20, 2021, Plaintiff was fired from UBM.  Id. at ¶ 14.

The next day, on December 21, 2021, Plaintiff notified the Union of her termination and demanded reinstatement.  Id. at ¶ 15, Ex. C.  The Union then sent a grievance invitation letter to UBM regarding Brion's claim.  Id.  On April 22, 2022, the Union submitted the dispute to arbitration.  Id. at ¶¶ 13, 15; Ex. C.

On March 18, 2025, the Union communicated to Plaintiff that it would no longer pursue her religious discrimination claim against UBM "because [the Union has] not been able to meaningfully discuss the claim with [Plaintiff]," but informed her of her right to invoke the mediation process administered by OCA. Id. at ¶¶ 26–27; Ex. G.

Following her termination from UBM, the Union reassigned Plaintiff to work at N&N Services in February 2023. Id. at ¶ 18. Plaintiff asserts that while at N&N Services, she was "singled out for degrading tasks" while the Muslim and Albanian women employees on the team were rotated through minimal cleaning zones. Id. at ¶¶ 20–21. When Plaintiff "questioned this disparity and discussed her union rights with coworkers," her supervisor "continually suspended her for unrelated and false reasons." Id. On December 6, 2023, and March 23, 2024, Plaintiff complained to the Union regarding her suspensions from N&N Services. Id. at ¶ 21, Ex. E. On April 25, 2024, Plaintiff was terminated from N&N Services. Id. at ¶ 23.

### 1. The Collective Bargaining Agreement

During her employment at UBM and N&N Services, Plaintiff was a member of the Union and subject to a Collective Bargaining Agreement ("CBA") between the Union and RAB, a multi-employer bargaining unit that includes UBM and N&N Services. See Dkt. No. 38, Ex. A ("CBA"). During the COVID-19 pandemic, and pursuant to a memorandum of agreement between the Union and Employer Defendants, Local 32BJ and ARB instituted a mandatory vaccination policy, which

required all employees to be vaccinated against COVID-19, unless the employee requested and was granted an exemption. Id., Ex. C.

Article V and VI of the CBA provides a two-step grievance process and arbitration procedures. See CBA at 17–24. The CBA states that the arbitrator is to "decide all differences arising between the parties as to interpretation, application or performance of any part of [the CBA] and such other issues as the parties are expressly required to arbitrate before him/her under the terms of [the CBA]." Id. at 19. These arbitration procedures are to constitute "the sole and exclusive method for the determination of all such issues." Id. at 21.

In addition, Article XIX of the CBA contains a "No Discrimination" provision, which provides the following:

> There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, sexual orientation, union membership or any characteristic protected by law, including, but not limited to, claims made pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act, . . . or any other similar laws, rules or regulations. All such claims shall be subject to the grievance and arbitration procedure (Article V and VI) *as the sole and exclusive remedy for violations*. Arbitrators shall apply appropriate law in rendering decisions based upon claims of discrimination.

CBA at 111 (emphasis added).

### 2. Reserved Question Letter

In December 2023, the presidents of RAB and Local 32BJ wrote a joint letter titled "RE: Reserved Question on Mandatory Arbitration for Statutory Discrimination Claims" to "confirm [their] understanding on whether arbitration is mandatory for statutory discrimination claims brought under the No Discrimination

Clause" in the CBA. Dkt. No. 38, Ex. B. The letter stated that following the Supreme Court of the United States' decision in 14 Penn Plaza LLC v. Pyett, 556 U.S. 247 (2009), the Union and RAB were in dispute about the "Reserved Question," which is as follows:

> The Union contends that the CBAs do not make provision for arbitration of any claims that the Union does not choose to take to arbitration, including statutory discrimination claims, and therefore, individual employees are not barred from pursuing their discrimination claims in court where the Union has declined to pursue them in arbitration. The RAB contends that the CBAs require arbitration of all individual claims, even where the Union has declined to bring such claims to arbitration.

Id. The letter further stated that the Union and RAB "agree that the provisions of the No-Discrimination Protocol do not resolve the Reserved Question." Id.

In the instant motions to compel arbitration, Employer Defendants argue that the "No Discrimination" provision requires Plaintiff to arbitrate her claims rather than sue in federal court. The Union asserts that, in light of the "Reserved Question," the Court should deny arbitration.

**LEGAL STANDARD**

The Federal Arbitration Act provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." Id. (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985)). Under the FAA, "any doubts concerning the scope of arbitrable issues

6

should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983).

In analyzing a motion to compel arbitration, the court must determine whether the parties agreed to arbitrate and whether their claims are within the "scope" of the arbitration agreement. Abdullayeva v. Attending Homecare Servs. LLC, 928 F.3d 218, 221 (2d Cir. 2019). If these requirements are met, the court must "direct[] the parties to proceed to arbitration in accordance with the terms of the agreement[,]" 9 U.S.C. § 4, and stay the litigation of the issues found "referable to arbitration," "until such arbitration has been had in accordance with the terms of the agreement[.]" Id. § 3; see also Katz v. Cellco P'ship, 794 F.3d 341, 347 (2d Cir. 2015) ("[T]he text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested.").

Where "some, but not all, of the claims in the case are arbitrable," the court must "determine whether to stay the balance of the proceedings pending arbitration." Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987), abrogated on other grounds by Rodriguez-Depena v. Parts Auth., Inc., 877 F.3d 122, 124 n.1 (2d Cir. 2017). "That decision is one left to the district court . . . as a matter of its discretion to control its docket." Moses H. Cone Mem'l Hosp., 460 U.S. at 20 n.23. In determining whether to stay claims that are not subject to arbitration, the court properly considers "factors such as the desirability of avoiding piecemeal litigation

7

and the degree to which the cases necessitate duplication of discovery or issue resolution." Katsoris v. WME IMG, LLC, No. 16 Civ. 135 (RA), 237 F. Supp. 3d 92, 110 (S.D.N.Y. 2017) (citation omitted).

"A discretionary stay is particularly appropriate where there is significant factual overlap between the remaining claims and the arbitrated claims." Winter Invs., LLC v. Panzer, No. 14 Civ. 6852 (KPF), 2015 WL 5052563, at *11 (S.D.N.Y. Aug. 27, 2015); see also Argus Media Ltd. v. Tradition Fin. Servs. Inc., No. 09 Civ. 7966 (HB), 2009 WL 5125113, at *3 (S.D.N.Y. Dec. 29, 2009) ("[N]umerous courts have held that where arbitrable and non-arbitrable claims arise out of the same set of facts, a stay usually is appropriate in the interest of judicial efficiency, because the arbitration may decide the same facts at issue in the litigation."). Additionally, stay orders are favored where "the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit." Genesco, 815 F.2d at 856.

**DISCUSSION**

## A. Title VII claims

The Court finds that Plaintiff's Title VII claims are subject to mandatory mediation and arbitration as to Employer Defendants pursuant to the terms of the CBA. First, the Court finds, in line with binding case law, that the No Discrimination clause of the CBA compels arbitration of Plaintiff's claims against Employer Defendants. In 14 Penn Plaza LLC v. Pyett, 556 U.S. 247 (2009), the Supreme Court examined an earlier version of the same CBA, analyzing the No Discrimination provision in the context of an ADEA claim. The Court upheld the Union-negotiated

8

arbitration provision as it applied to the respondent employees' statutory claims, noting that nothing in the text or legislative history of the ADEA precluded arbitration of such claims. Id. at 257–58.

Since Pyett, courts throughout this Circuit have consistently concluded that when the relevant CBA so specifies, as it does in this case, those statutes are also susceptible to mandatory arbitration. Lagerstrom v. Orsid Realty is particularly on point. No. 23 Civ. 727 (JPO), 2024 WL 532291 (S.D.N.Y. Feb. 9, 2024). Where, as here, plaintiff Lagerstrom was a member of Local 32BJ, claimed religious discrimination and retaliation under Title VII related to his refusal to be vaccinated against COVID-19, and was subject to the same CBA as Plaintiff, the Court found that Lagerstrom's claims were "subject to mandatory mediation and arbitration pursuant to the terms of the CBA." Id. at 2; see also Borrero v. Ruppert Hous. Co., Inc., No. 08 Civ. 5869 (HB), 2009 WL 1748060, at *2 (S.D.N.Y. June 19, 2009) (examining a CBA "materially indistinguishable" from the one at issue in Pyett and observing that "[i]t is clear that the [Supreme] Court's holding applies with equal force to Title VII claims."); Hamzaraj v. ABM Janitorial Ne. Inc., No. 15 Civ. 2030 (ER), 2016 WL 3571387, at *4 (S.D.N.Y. June 27, 2016) (collecting cases).

The Union attempts to distinguish Lagerstrom from the instant case by asserting that Lagerstrom "appear[s] to be based off an incomplete assessment of the CBA." Dkt. No. 56 at 7. Instead, the Union urges the Court to follow Eastern District of New York case Espada v. Guardian Serv. Indus., Inc., where that court held "[t]he Protocol's arbitration clause is permissive, not mandatory" in part because the parties

9

explicitly asserted that the reserved question is still an open question between the parties. No. 18 Civ. 5443 (ILG) (JO), 2019 WL 5309963, at *4 (E.D.N.Y. Oct. 18, 2019).

But the Union fails to acknowledge that Espada appears to be a one-off case that is contrary to courts in the rest of the Circuit, who have consistently held that Employer Defendants can compel arbitration, even if the Union declines to arbitrate those same claims. See Lobban v. Cromwell Towers Apartments, Limited Partnership, No. 18 Civ. 247 (CS), 345 F.Supp.3d 334, 348–49 (S.D.N.Y. 2018) (holding that although the reserved question is an open one between the parties, "the protocol grants the employee the power to pursue his claim in arbitration if the Union chooses not to bring it on his behalf"); Nelson v. Park City 3&4 Apartments, Inc., No. 16 Civ. 3533 (ERK) (RLM), 2021 WL 5304052, at *4 (E.D.N Y. Nov. 15, 2021) (holding that while the Union and RAB have an "ongoing disagreement" as discussed in the Reserved Question letter, "almost every judge in the Second Circuit that has considered this issue has rejected the Union's position and compelled arbitration").

## B. Stay of other claims

Under the FAA, this Court must stay litigation of the claims found "referable to arbitration" pending the outcome of that arbitration. 9 U.S.C. § 3. Given the "significant factual overlap" between the Title VII claims that must be arbitrated and those potentially remaining for litigation, it would be inefficient for the instant action to proceed against Employee Defendants while arbitration is ongoing. See Winter Invs., 2015 WL 5052563, at *11. Such a course would multiply the parties' costs,

provide ample opportunities for duplicative discovery, and "create the possibility of inconsistent outcomes." Hughes, Hooker & Co. & Hughes, Hooker (Correspondents) S.A. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc., No. 04 Civ. 1859 (SHS), 2005 WL 1384055, at *6 (S.D.N.Y. June 9, 2005). As such, all claims against Employer Defendants shall be stayed pending the outcome of arbitration.

## CONCLUSION

For the foregoing reasons, Employer Defendants' motions to compel arbitration at Dkt. Nos. 33, 42, and 45 are **GRANTED**. This case is thus **STAYED** against Employer Defendants pending the outcome of arbitration. The parties are directed to notify the Court within 14 days of the conclusion of arbitration.

**The Clerk of Court is respectfully requested to close Dkt. Nos. 33, 42, and 45.**

SO ORDERED.

DATED:    New York, New York
          January 28, 2026

_Jennifer E. Willis_

JENNIFER E. WILLIS
United States Magistrate Judge